UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE ALEX CABEZA-OLAYA,<br><br>               Petitioner,<br><br>v.<br><br>FMC DEVENS FEDERAL MEDICAL CENTER (WARDEN),<br><br>               Respondent. | Civil Action No. 25-cv-10295-MJJ |

## MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS

Petitioner Jose Alex Cabeza-Olaya has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 even though he is not challenging the current fact or duration of his confinement. Rather, Cabeza-Olaya seeks prospective relief—that is, he seeks an order that the Bureau of Prisons ("BOP") cannot, at some point in the future, "remove" credits he has earned under the First Step Act ("FSA") from his sentence computation.

The FSA is a statute that allows eligible prisoners to earn time credits by participating in "recidivism reduction" activities. 18 U.S.C. § 3632(d)(4). These time credits are then applied to expedite a prisoner's transfer from prison to prerelease custody or early supervised release *unless* the prisoner is the subject of a final order of removal under any provision of the immigration laws. 18 U.S.C. § 3632(d)(4)(E). When that happens, by law, the prisoner is no longer eligible to have his earned time credits applied toward prerelease custody or supervised release. *Id.*

Though Cabeza-Olaya is currently eligible to accrue time credits under the FSA, has been credited with all time credits he has earned to date, and is not the subject of a final order of removal, Cabeza-Olaya has nonetheless filed this petition out of concern that BOP *might* attempt to "remove" his earned time credits at some point in the future. Because he lacks standing to pursue

this prospective relief, and because he has failed to exhaust his administrative remedies, Cabeza-Olaya's petition must be dismissed.

I.     BACKGROUND

    A. Legal Framework

The FSA requires the BOP to "provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reductions ("EBRR") programs," including by awarding "[t]ime credits." § 3632(d). To that end, an eligible prisoner "who successfully completes [EBRR] programming or productive activities [PAs], shall earn time credits as follows:

> (i)      A prisoner shall earn 10 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs].
>
> (ii)      A prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs]."

§ 3632(d)(4)(A)(i)-(ii). Once an eligible prisoner "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment," and satisfied certain other requirements, the BOP will transfer the prisoner from prison to prerelease custody (such as a residential reentry center), or from prerelease custody to supervised release. § 3624(g)(1).

The FSA also states that a prisoner "is ineligible to apply time credits…if the prisoner is the subject of a final order of removal under any provision of the immigration laws[.]" § 3624(d)(4)(E); *see also* 28 C.F.R. § 523.44(a)(2) ("For any inmate eligible to earn FSA Time Credits under this subpart who is…[s]ubject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17), the Bureau may not apply FSA Time Credits towards prerelease custody or early transfer to supervised release).

2

### B. Factual Background

On February 14, 2019, Cabeza-Olaya was sentenced in the United States District Court for the District of Florida for conspiracy to distribute more than five kilograms of cocaine. Doc. 1, ¶ 1. Cabeza-Olaya is currently earning time credits under the FSA and has been awarded with all credits he has earned to date. Doc. 1, ¶¶ 5-6. Cabeza-Olaya has not attempted to exhaust his administrative remedies because "at this moment" he is "being granted with ETC (Earning Time Credits)". Doc. 1, ¶ 7.

## II.   LEGAL STANDARD

Responding to a habeas petition with a motion to dismiss is common practice. *See Murray v. Carrier*, 477 U.S. 478 (1986). A motion to dismiss for lack of subject matter jurisdiction in a habeas case, like jurisdictional motions in other civil cases, is subject to review under the standards of the Federal Rules of Civil Procedure. *See Rasul v. Bush*, 542 U.S. 466 (2004) (applying Fed. R. Civ. P. 12(b)(1) to the government's motion to dismiss a pending habeas petition on jurisdictional grounds). When ruling on a motion to dismiss filed under Rule 12(b)(1), the court must "treat the [petitioner's] factual allegations as true" and must afford the petitioner "the benefit of all inferences that can be derived from the facts alleged." *Delta Air Lines, Inc. v. Export-Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015)[1]

---

[1] The Supreme Court once noted in dicta that a "response to a habeas corpus petition is not like a motion to dismiss" because "[t]he procedure for responding . . . is set forth in the habeas corpus statutes," which, if inconsistent with the Federal Rules, take "precedence over the Federal Rules." *Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 269 n.14 (1978). But that was before the enactment of the *Rules Governing Section 2254 Cases in the United States District Courts*, which now permit the assigned judge to order "an answer, *motion*, or other response" to a habeas petition, Habeas Rule 4 (emphasis added), including "a motion to dismiss," Advisory Committee Notes to Habeas Rule 4. This Court has therefore explained that "[m]otions to dismiss habeas petitions…are not inconsistent with habeas rules." *Delgado v. Dennehy*, 503 F. Supp. 2d

**III.    ARGUMENT**

    **A.  Cabeza-Olaya Lacks Standing.**

The doctrine of standing is rooted in Article III of the U.S. Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies."  *See* U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot."  *Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010).  To establish standing, a petitioner must have "1) suffered an injury in fact 2) that is fairly traceable to the challenged conduct of the defendant, and 3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Here, Cabeza-Olaya has not suffered an injury in fact.  To establish an injury in fact, a petitioner must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560.  As to imminence, "[a]llegations of *possible* future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis added).  That said, "an allegation of future injury may suffice if the threatened injury is certainly impending, or [if] there is a substantial risk that the harm will occur."  *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2007).

Cabeza-Olaya has not been injured.  He admits the BOP has credited him with all time credits he has earned to date.  To the extent Cabeza-Olaya is concerned the BOP might "remove" his earned time credits at some point in the future, that risk of harm is purely speculative.  The BOP has not "removed" any time credits from Cabeza-Olaya to date and, provided circumstances

---

411, 413 (D. Mass. 2007).  Moreover, district courts can apply the *Rules Governing Section 2254 Cases* to petitions brought under § 2241, such as this one.  *See* Habeas Rule 1(b).

remain the same, Cabeza-Olaya has not alleged any reason why the BOP might do so in the future.[2] Though he asserts in conclusory fashion that BOP has "removed" earned time credits from *other* inmates at *another* federal facility—FCI Fort Dix—he has not offered any factual development as to who these inmates were, why their credits were removed, or why the BOP would adopt the same approach in his case (particularly when it has not done so already).

Rather, it seems Cabeza-Olaya is concerned he might become the subject of a final order of removal at some point in the future, and should that happen, he is trying to preemptively ensure the BOP will not take his earned time credits away. But again, Cabeza-Olaya does not have standing to seek relief for this hypothetical harm that has not yet occurred. *See United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009) ("Because ripeness is a constitutional prerequisite for jurisdiction, and it is a question of timing, if a claim involves contingent future events that may not occur as anticipated, it is not yet ripe for judicial review"). Moreover, should Cabeza-Olaya later become the subject of a final order of removal, the BOP will be required by law to render Cabeza-Olaya ineligible to have his earned time credits applied toward prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(E). The BOP does not have authority to deviate from the FSA.

Because he has not suffered an injury in fact, Cabeza-Olaya lacks standing and his petition should be dismissed.

---

[2] To the extent Cabeza-Olaya suggests the BOP might "remove" his time credits simply because he has an immigration detainer, that argument is unavailing. The BOP is aware that Cabeza-Olaya has an immigration detainer and has not "removed" his time credits to date.

**B.      Cabeza-Olaya Has Not Exhausted His Administrative Remedies.**

Cabeza-Olaya's petition must be dismissed for the additional reason that he did not exhaust his administrative remedies prior to filing. Ordinarily, a federal inmate must exhaust the BOP's administrative remedies before filing a Section 2241 petition in federal court. *See Rogers v. United States*, 180 F.3d 349, 358 (1st Cir. 1999); *Nygren v. Boncher*, 578 F. Supp. 3d 146, 151 (explaining "section 2241 petition seeking sentence credit…subject to dismissal if" inmate "fails to exhaust" BOP's administration remedies).

Codified in 28 C.F.R. §§ 542.10 to 542.19, the BOP's administrative remedies program sets out a multilevel process to exhaust section "2241 claims challenging the computation of a release date." *Cook v. Spaulding*, 433 F. Supp. 3d 54, 57 (D. Mass. 2020). Cabeza-Olaya acknowledges he has not exhausted the administrative process—precisely because "at this moment" he does not have anything to resolve because "he is being granted with the ETC (Earned Time Credits)." Doc. 1, ¶ 7. This point only underscores that Cabeza-Olaya lacks standing for the relief he now seeks in this petition. Regardless, Cabeza-Olaya goes on to assert that pursuing his administrative remedies would be "futile" because the "administrative body is shown to be biased." *Id.* While some courts recognize the potential for a waiver of the administrative exhaustion requirement for Section 2241 petitions, "courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175 (1st Cir. 2016).

An inmate's interests "weigh heavily" when 1) "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; 2) "an administrative remedy may be insufficient because the agency is powerless to grant effective relief

6

or incompetent to adjudicate the claims at issue"; or 3) "the administrative body is clearly biased." *Id.* at 176. None of these factors are present here. Not only is the calculation of a petitioner's sentence within the particular expertise of the BOP, *see Walsh v. Boncher*, 652 F. Supp. 3d 161, 169 (D. Mass. 2023) (observing that the BOP has "special expertise in analyzing policies and precedent governing sentence computation and projected release dates"), but there would be no prejudice to Cabeza-Olaya in requiring him to exhaust his administrative remedies. Weighing Cabeza-Olaya's interests against those of the agency, where agencies are generally given "the first opportunity to apply [their] expertise", the scale tips in favor of the BOP in requiring Cabeza-Olaya to exhaust his administrative remedies—if he actually has an issue to resolve. *See Anversa*, 835 F.3d at 175.

## IV.   CONCLUSION

For the reasons described above, this Court should deny the petition.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: February 27, 2025          By:     */s/ Nicole M. O'Connor*
NICOLE M. O'CONNOR
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3112
nicole.o'connor@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants: **Jose Alex Cabeza-Olaya, #17755-104, Devens Federal Medical Center, Inmate Mail/Parcels, P.O. BOX 879, AYER, MA 01432.**

      */s/ Nicole M. O'Connor*
      NICOLE M. O'CONNOR
      Assistant U.S. Attorney

Dated:  February 27, 2025